United States Court of Appeals
Fifth Circuit

**F I L E D**

**June 21, 2004**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 03-20612
Summary Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

TERRANCE SWEAT,

Defendant-Appellant.

--------------------
Appeal from the United States District Court
for the Southern District of Texas
USDC No. H-02-CR-368-5
--------------------

Before BARKSDALE, EMILIO M. GARZA, and DENNIS, Circuit Judges.

PER CURIAM:[*]

Terrance Sweat appeals his convictions of possession with intent to distribute five grams or more of cocaine base, aiding and abetting possession with intent to distribute five grams or more of cocaine base, and conspiracy to possess with intent to distribute five grams or more of cocaine base. We affirm the convictions.

Sweat and four co-defendants were indicted as a result of an undercover investigation of drug distribution activities in

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Huntsville, Texas.  DEA Agent Ronald Patrick Starks was introduced to Sweat via a Confidential Source ("CS").  Starks testified about three transactions in which Sweat sold him crack; all three transactions were arranged via the CS.

On February 12, 2002, Starks, Sweat, and the CS met at a Quick Pic grocery store in Huntsville to complete a sale of cocaine base.  Sweat arrived at the Quick Pic riding as a passenger in a green Neon driven by his girlfriend.  Sweat signaled for Starks and the CS to follow him.  Starks and the CS followed the Neon to Sweat's girlfriend's trailer.  After leaving Sweat at her trailer, his girlfriend drove away.  Inside the trailer, Sweat went to a kitchen drawer and retrieved a pill bottle containing several rocks of crack cocaine.  Starks picked several rocks and gave Sweat $160.  This transaction was not subject to the indictment in this case and the jury was given a limiting instruction.

On February 20, 2002, Sweat and Starks planned to meet at the CS's trailer on Thompson Street in Huntsville.  Starks arrived at the trailer first and observed Sweat arrive in a car driven by one of his co-defendants, Quentin Plattenburg.  Sweat was riding in the front passenger seat and when Starks walked up to the passenger window to speak to Sweat, he saw what appeared to be a crack cocaine cookie sitting on the right side of Sweat's lap.  Starks purchased the cookie for $550.  A third transaction

occurred between Sweat and Starks at the CS's trailer; however, Plattenburg was not involved in this transaction.

Starks characterized Plattenburg as being "involved" in the deal because he was in a position to see and hear the deal, and he watched the deal. Plattenburg did not say anything; however, he did nod his head as a greeting to Starks. Although the trial evidence consisted of three transactions between Sweat and Starks, Plattenburg was involved in only the February 20 transaction. No evidence was presented as to Sweat's source of the crack. Jose Valles, a Huntsville police officer, testified that he had seen Sweat "hanging out" with his co-defendants but conceded that he had not observed them engaging in drug dealing activities together.

Normally, this court reviews a challenge to the sufficiency of the evidence to determine whether "a rational trier of fact could have found that the evidence established guilt beyond a reasonable doubt." United States v. Barton, 257 F.3d 433, 439 (5th Cir. 2001) (citation omitted).

However, because Sweat did not move for a judgment of acquittal, this court reviews only for whether there was a manifest miscarriage of justice. United States v. Pierre, 958 F.2d 1304, 1310 (5th Cir. 1992) (en banc). A manifest miscarriage of justice exists when the record is devoid of evidence pointing to guilt or when the "evidence on a key element

of the offense was so tenuous that a conviction would be shocking." Id. (citation omitted).

To establish a conspiracy, the Government must prove the existence of an agreement between two or more persons to violate the narcotics laws, knowledge of the agreement, and voluntary participation in the conspiracy. United States v. Booker, 334 F.3d 406, 409 (5th Cir. 2003). The agreement may be tacit and may be inferred from circumstantial evidence. Id. Proof of mere association with persons involved in criminal activity without more is not sufficient to establish participation in a conspiracy. United States v. Smith, 203 F.3d 884, 887 (5th Cir. 2000). Similarly, mere knowing presence is not sufficient to establish knowledge of or participation in a conspiracy. United States v. Espinoza-Seanez, 862 F.2d 526, 537 (5th Cir. 1988).

Under the manifest miscarriage of justice standard of review, the evidence was sufficient to convict Sweat of the conspiracy count. The jury could have inferred from the testimony concerning the events of February 20 both the existence of a tacit agreement between Plattenburg and Sweat and their knowledge of and voluntary participation in the agreement. Plattenburg assisted Sweat in the furtherance of the conspiracy by driving Sweat to the CS's trailer on February 20 and observing the deal while the crack cookie sat in plain sight on Sweat's lap. Sweat arguably would not have allowed Plattenburg to accompany him on the February 20 transaction were Plattenburg not

"in on" the conspiracy. Indeed, Sweat could have conducted the transaction in the CS's trailer while Plattenburg waited in the car. It thus cannot be said that the record is devoid of evidence of a conspiracy between Sweat and Plattenburg. See Pierre, 958 F.2d at 1310.

To secure a conviction for aiding and abetting, the Government must prove that the defendant: "(1) associated with the criminal enterprise; (2) participated in the venture; and (3) sought by action to make the venture succeed." United States v. Casilla, 20 F.3d 600, 603 (5th Cir. 1994). The evidence supporting a conspiracy conviction typically supports an aiding and abetting conviction. Id.

To support Sweat's conviction for aiding and abetting Plattenburg's possession with intent to distribute, Sweat must have aided and abetted both the possession of the crack and the intent to distribute it. See United States v. Delagarza-Villarreal, 141 F.3d 133, 140 (5th Cir. 1997). Thus, to support Sweat's conviction, the evidence must show that Plattenburg had actual or constructive possession of the crack. See id. Constructive possession "is the knowing exercise of, or the knowing power or right to exercise dominion and control over the proscribed substance." United States v. Richardson, 848 F.2d 509, 512 (5th Cir. 1988) (quotation and emphasis omitted). "Constructive possession may be shown by ownership, dominion or control over the contraband itself, or dominion or control over

the premises or the vehicle in which the contraband was concealed." Id. (quotation and emphasis omitted). Plattenburg exercised control over the car where the February 20th sale occurred.

While we have found constructive possession in cases where the contraband was more inaccessible to the driver than the crack was to Plattenburg in this case, "we have hesitated to rely *solely* on control of the vehicle, even over an extended trip, and our affirmance of conviction[s] has been influenced by such additional factors as the suspicious nature of the trip and circumstances evidencing a consciousness of guilt on the part of the defendant." Id. Here the evidence shows that the crack was in plain view throughout the sale, and there is no indication that Plattenburg did not know that he was transporting crack cocaine. Therefore, under the manifest miscarriage of justice standard of review, the evidence supports a jury finding that Plattenburg had constructive possession of the crack cocaine sold in the February 20 transaction. The intent to distribute can be inferred from the quantity of crack distributed. Consequently, the evidence was also sufficient to support Sweat's conviction for aiding and abetting Plattenburg's possession of crack with intent to distribute.

Finally, we note that the February 12 transaction occurred in Sweat's girlfriend's trailer and that Sweat retrieved the crack, which was in a pill bottle, from her kitchen drawer.

However, this transaction was not subject to the indictment in this case and the jury was given a limiting instruction. Accordingly, Sweat's aiding and abetting conviction must be affirmed.

Sweat additionally argues for the first time on appeal that the provisions in 21 U.S.C. § 841(a) and (b) are unconstitutional in light of Apprendi v. New Jersey, 530 U.S. 466 (2000). Sweat acknowledges that his argument pursuant to Apprendi is foreclosed by United States v. Slaughter, 238 F.3d 580, 582 (5th Cir. 2000), but seeks to preserve it for further review.

AFFIRMED.